Myrtle Charlotte Weissbrodt, Appellant, v. H. W. Elmore & Company and H. W. Elmore, Appellees.

Gen. No. 34,592.

2

Opinion filed May 19, 1931.

JOEL C. CARLSON, for appellant.

DENEEN, HEALY & LEE and BECKMAN, OLSON, HOUGH & WOODS, for appellees; HARRY W. LIPPINCOTT and CHARLES F. HOUGH, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action in assumpsit for money had and received, commenced on September 17, 1929, there was a

trial without a jury resulting in the court, on July 28, 1930, finding the issues in favor of defendants and entering judgment against plaintiff for costs. The present appeal followed.

Plaintiff's declaration consisted of a special count and the common counts. In the special count there is set forth a written agreement under seal, dated January 24, 1927, signed by "ELMORE'S WESTCHESTER REALTY TRUST, of which the Foreman Trust and Savings Bank is trustee," by "H. W. Elmore, Manager," as first party, and by plaintiff, as second party. First party agrees, if second party shall make all the payments and perform all the agreements to be made and performed by her, to convey to her by deed "all the right, title and interest of the Foreman Trust and Savings Bank, as trustee, or its successor in trust," in and to a certain lot or parcel of land (describing it) in Cook county, Illinois. And second party agrees "to pay to H. W. Elmore as Manager," at his Chicago office, "the total sum of $3,000," in the manner following: "$750 on the date hereof, the receipt of which is hereby acknowledged; the sum of $2,250, in monthly installments of $30 each, payable on the 24th day of each and every month from and after the date hereof, with interest at 6 per cent per annum beginning from one year after the date hereof, payable semi-annually, on the whole sum remaining from time to time unpaid." Numerous other covenants to be performed by the respective parties are set forth in the contract. It is then alleged in the special count that plaintiff made monthly payments of $30 each, as indorsed on the contract, and other payments in small amounts (stating them); that "said alleged contract did not purport to be a contract between the plaintiff and any living or artificial person, but to be a contract *between plaintiff and a written document or chose in action,* to wit, 'Elmore's Westchester Realty Trust' . . . and is and

always was null and void''; and that by reason thereof defendants then and there . . . became indebted to plaintiff in the sum of $5,000, and being so indebted promised to pay to plaintiff said sum with interest, etc. In plaintiff's affidavit of claim she alleges that her demand is for ''money had and received,'' and that there is due to her from the defendant the sum of $1,675.19, and legal interest.

Defendants filed a joint demurrer to the special count and a plea of the general issue to the common counts. In their affidavit of merits, in which is set forth the nature of their defense, it is alleged that the moneys received by defendants are moneys which were paid under the contract set forth in the first count, which contract ''is a valid, existing and binding obligation of the parties and is not null and void''; that it was entered into ''in accordance with the terms of a certain deed of trust to the Foreman Trust & Savings Bank, an Illinois corporation, and a certain trust agreement and supplement thereto between certain beneficiaries, the Foreman Trust & Savings Bank, Howard W. Elmore and H. W. Elmore & Co., a corporation''; and that defendants ''have not had or received any moneys of the plaintiff to which she is entitled to a return.''

On March 22, 1930, defendants' demurrer to the special count was overruled, and they filed a plea of the general issue to that count,—their affidavit of merits standing as such to said plea. On May 9, 1930, by leave of court, they filed three additional pleas,— the first being a verified plea of nonjoint liability.

In the second additional plea they alleged that they were not indebted to plaintiff for the moneys paid by her to them, for the reason that the payments were made and received by virtue of the agreement set forth in the special count, which agreement is not null and void as charged; that the agreement was executed by

H. W. Elmore as manager of said Elmore's Westchester Realty Trust; that it is provided therein that if plaintiff shall make all the payments and perform all the covenants (as therein provided to be made and performed by her), said Elmore, as manager, will cause to be conveyed to plaintiff "all the right, title and interest of said Foreman Bank, as trustee, in and to the property therein described"; that the Foreman Bank held title to the described property (along with other lots in the same subdivision) "as trustee, under a certain trust agreement entered into on October 1, 1926, by and between William C. Tackett, Harry L. Drake and Charles F. Hough, the Foreman Bank and Howard W. Elmore"; that in the trust agreement it is provided that Elmore "shall have the power and authority, in the name and on behalf of the trust estate, to sell for cash or to enter into contracts for the sale of the subdivision lots," and that "such sales shall be made on contracts in duplicate" in a particular form; that in the trust agreement it is further provided that "the manager, or anyone authorized by him in writing, may order the trustee to execute and deliver deeds on any one or more of the subdivision lots"; that the said agreement, as set forth in plaintiff's first count, is substantially in the form provided for in said trust agreement and is executed by Elmore in the name and on behalf of the trust estate, as created by the trust agreement, and is in accordance with the authority therein given to him; and that in the trust agreement it is further provided that the trust estate therein created shall, for convenience, be designated "Elmore's Westchester Realty Trust."

In the third additional plea defendants alleged that they are not indebted to plaintiff, as charged in the special count, for the reason that the payments mentioned therein were made to and received by the defendants on the purchase price of certain property

under and by virtue of a certain *other* agreement, entered into by plaintiff and defendants on January 23, 1927, as follows:

"Chicago, Illinois, 1/23/1927.

"Received of Myrtle Charlotte Weissbrodt $30, as payment on purchase price of property, known as Lot 18, Block 1, in 31st & Wolf Road, Cook County, Illinois. $720 additional to be paid within 7 days from date hereof, at which time contract of sale on our regular printed form will be executed. Price of property $3,000. Balance payable in monthly installments of $30 each, with interest at the rate of 6 per cent per annum, payable semi-annually, on the whole sum remaining from time to time unpaid.

"This transaction is subject to prior sale and the written approval of H. W. Elmore, manager, and if not approved, payment to be returned by the undersigned; but, if approved, to be closed 2/1/1927, or above deposit will be forfeited.

(Signed)    F. J. Lange
H. Rosenthal.

"I hereby agree to the above price and terms:
(Signed)    Myrtle Charlotte Weissbrodt,
Purchaser.

Address: 4452 N. Western Ave.
APPROVED.
(Signed)    H. W. Elmore, Manager."

And defendants further alleged that thereafter, on February 8, 1927, plaintiff paid the further sum of $720, as provided in the agreement, and thereafter paid the further sums as mentioned in the special count of the declaration; but that she has failed and refused to pay the monthly instalments of $30 for the month of May, 1929, or for months subsequent thereto, and is in default therefor.

To the second and third additional pleas plaintiff filed replications. In her replication to the second

plea she alleged that the contract of January 24, 1927, as set forth in her declaration "is not a valid and binding contract" between the parties hereto, "because said 'Elmore's Westchester Realty Trust' never was either a living or artificial person, that is, it never was either an individual, a partnership or a corporation." And she further alleged that she ought not be barred from having her aforesaid action because "said H. W. Elmore did not have power or authority, in the name or on behalf of the trust estate, or Elmore's Westchester Realty Trust, or anyone else, to enter into the contract set forth in her declaration."

On the trial plaintiff not only introduced in evidence the agreement of January 24, 1927, between herself and "Elmore's Westchester Realty Trust," as set forth in the special count, *but also* the trust agreement of October 1, 1926 (mentioned in defendants' second additional plea) between Tackett, Drake and Hough (first parties and therein called the "Beneficiaries") and the Foreman Bank (second party and called the "Trustee") and Howard W. Elmore (third party and called the "Manager"). In the recital in the trust agreement it is stated that "contemporaneously with the execution and delivery of this trust agreement the *Beneficiaries* caused to be conveyed to the Trustee (Foreman Bank)" certain real estate (being the lot in question and other lots in the subdivision). In section 1 of Article I of the trust agreement it is provided that the title to all the subdivision lots shall be held in trust by the Trustee (Foreman Bank) "for the ultimate use and benefit of" Tackett, Drake and Hough; and in section 2 it is provided that "the interest of any beneficiary shall consist solely of the power of direction to deal with the title to said property and to receive the proceeds from rentals, sales, etc." In Article II it is provided that the trustee (Foreman Bank) is the sole owner of the real estate, but "will deal with

it only when authorized in writing on the direction of said beneficiaries, or any two of them, *except* that the manager (Elmore) may order the Trustee to execute and deliver deeds,'' etc.; and it is further provided that ''the beneficiaries and manager shall have the management and control of the property.'' In Article III it is provided that Elmore ''is hereby appointed manager of this trust estate, and this trust estate shall, for convenience, be designated 'Elmore's Westchester Realty Trust' '' and it is further provided that said manager ''shall have authority in the name and on behalf of the trust estate to sell the subdivision lots''— the sales to be made by contracts of a certain form. In Article V it is provided that said manager (Elmore) shall from time to time receive and collect all moneys due and payable on the contracts. Above the signature there is a provision to the effect that Foreman Bank ''joins'' in the execution of the agreement ''for the purpose of signifying its assent thereto,'' and the bank further agrees ''to hold title to the subdivision lots, subject only to the terms and provisions of this Trust Agreement, and to make, execute and deliver from time to time all conveyances and instruments required under the terms and provisions of this Trust Agreement.''

By the introduction of the trust agreement by plaintiff, she herself introduced evidence disclosing that the contract of January 24, 1927, which she made with ''Elmore's Westchester Realty Trust'' (followed by numerous monthly payments thereon), was made in pursuance of the provisions of the trust agreement; that the beneficiaries were three individuals, Tackett, Drake and Hough; and that they were virtually engaged as *copartners,* using for convenience the name of the so-called ''Trust,'' and operating through their manager (Elmore) in the business of selling to various persons the lots in said subdivision, of which the Fore-

man Bank had the legal title, but of which they were the equitable owners.

On the trial plaintiff testified that she signed the preliminary agreement or receipt of January 23, 1927 (as above set forth in defendants' third additional plea); that Lange and Rosenthal (who also signed said agreement) were agents and employees of Elmore; that on the following day she also signed the agreement of January 24, 1927 (set forth in her declaration); that after making the two preliminary payments thereon, aggregating $750, she made monthly and other payments thereon; that she made all payments, except the $750, to the cashier in the offices of defendants in Chicago; and that she had paid on the contract the total sum of $1,675.19. Another witness, called by her, testified as to the computation of interest, at the legal rate, on all payments made by her. The total amount of interest, up to the date of the trial, was stated to be $219.02, making plaintiff's total claim $1,894.21.

On the trial, besides contending that the contract of January 24, 1927, is void on the ground of want of mutuality, in that said "Elmore's Westchester Realty Trust" is not either an individual, a copartnership or a corporation, and, hence, not a legal entity against whom the contract may be enforced in case of any violation by it of its provisions, plaintiff contended that said contract is void for another reason, namely, that on the day it was executed (January 24, 1927) by H. W. Elmore, as "Manager," he had no authority as such to execute the contract because he had ceased to be manager. To support this contention plaintiff introduced in evidence a so-called "Supplement to Trust Agreement," *dated December 31, 1926*. This agreement is between Tackett, Drake and Hough as first parties, the Foreman Bank as second party, Elmore as third party and H. W. Elmore & Co., a corporation, as fourth party, and is to the effect that Elmore's resignation as manager of the trust estate has been ac-

cepted and H. W. Elmore & Co., a corporation, is made the manager in his stead. To meet this contention defendants called as a witness John P. Derning, who testified that said supplementary agreement, although bearing date of December 31, 1926, was not actually signed by all· the parties, or delivered, until May 18, 1927 (about four months after the agreement of January 24, 1927, was signed by plaintiff and by Elmore as manager of the trust estate). This testimony was not contradicted.

The main contention of plaintiff's counsel, here urged as a ground for a reversal of the judgment against plaintiff, is that the contract of January 24, 1927 (set forth in plaintiff's special count) is void for lack of mutuality, because the vendor, "Elmore's Westchester Realty Trust," is not an individual, a co-partnership or a corporation, against whom the vendee (plaintiff) could proceed to compel a conveyance. The argument is in substance that, if plaintiff had fully complied with the contract and had made all of her monthly payments (instead of defaulting thereon in May, 1929, and thereafter) and had fully paid the purchase price of $3,000, and had demanded a deed of the property and that demand had been refused, she could neither have maintained a suit in equity for specific performance against anyone, nor a suit at law for damages, and that, hence, the contract is void for lack of mutuality, and she is entitled in the present action to recover back all payments made by her, together with legal interest thereon. And counsel, to sustain the contention, places great reliance on the case of *Gardner v. Shekleton*, 253 Ill. App. 333, decided by the third division of this court in May, 1929, but which case apparently did not reach the Supreme Court. In the opinion (p. 336) it is said (italics ours):

"The real point at issue springs from the contention that the contract is null and void as the vendor in the

contract is neither an individual, a partnership, nor a corporation, and that therefore as defendants received plaintiff's money under the pretence that said contract was valid, they are liable to pay the same back to plaintiff, as money had and received for his benefit. We think the point is well taken. If the vendor in the contract is not a partnership, an individual or a corporation, then no action would lie against it, and *we find no evidence in the record which would warrant any other conclusion.* This being so, plaintiff has a right to recover his damages as for money had and received."

After referring to the case of *Weber v. Hulbert,* 225 Ill. App. 321, it is further said in the opinion in the *Shekleton* case, *supra* (p. 337, italics ours):

"The so-called contract in question *is under seal and cannot be varied by parol,* and the authorities are to the effect that in a contract under seal a person not named in the contract as a party thereto cannot be held liable, or have the advantage of a contract made in some other name on the theory that it was made for his benefit as an undisclosed principal or otherwise." (Citing the cases of *Walsh v. Murphy,* 167 Ill. 228; *Moore v. House,* 64 Ill. 162; and *Harms v. McCormick,* 132 Ill. 104.)

We do not think that the holdings in the *Shekleton* case (1st paragraph above quoted) are applicable to the present case, for the reason that it sufficiently appears from the evidence in the present case that the real vendors in the contract in question were three individuals, Tackett, Drake and Hough, who as *copartners* were engaged, under the name of "Elmore's Westchester Realty Trust" and through their authorized agent or manager (Elmore), in the business of selling lots in a certain subdivision, of which the Foreman Bank had the legal title but of which they were the equitable owners. That they can properly be con-

sidered as the real vendors and as copartners, using the name of "Elmore's Westchester Realty Trust," is sustained, we think, by the holdings in the following cases: *Winstanley v. Gleyre,* 146 Ill. 27, 38; *Roby v. Colehour,* 135 Ill. 300, 336; *Phillips v. Reynolds,* 236 Ill. 119, 120; *Morse v. Richmond,* 97 Ill. 303, 310–11; *Daugherty v. Heckard,* 189 Ill. 239, 244–5. In *Union Brewing Co. v. Interstate Bank & Trust Co.,* 240 Ill. 454, 461, it is said: "A person may adopt and use, as indicative of his negotiable and other contracts, a business name or style entirely different from his own proper name, and when he, by himself or a general agent, enters into a negotiable or other contract under such adopted business name, he will be bound by such contract as effectually as though it had been entered into and executed under his own proper name and signature." (See, also, *Hart v. Seymour,* 147 Ill. 598, 610–11.)

And we do not think that, under the present statute of this State (Cahill's St. ch. 110, ¶ 33) the fact that the contract here in question is under seal affects the mutuality thereof, as claimed by counsel. (See *Webster v. Fleming,* 178 Ill. 140, 148–9; 47 A. L. R. pp. 13, 14 (note); *Balchunas v. Novicki,* 257 Ill. App. 157, 160; *Wilson v. Bodamer,* 261 Ill. App. 23, 25–6.)

And we do not think there is any merit in the further contention of plaintiff's counsel that the contract is lacking in mutuality because plaintiff would be unable to enforce the contract against the beneficiaries (Tackett, Drake and Hough) under the trust agreement, since they did not hold the legal title to the lot in question. In *White v. Bates,* 234 Ill. 276, 278, it is said:

"It is not essential to the validity of a contract for the sale of real estate that the grantor should have the title at the time the contract is made. It is sufficient if, when the specified time arrives, he is able to tender, and does tender, a deed as required by his contract.

. . . It does not follow that because appellee could not resort to equity for the specific enforcement of this contract against the wife of appellant the contract is for that reason illegal and void. It may be conceded that appellant's wife was not bound by this contract and that a bill for specific performance would not lie against her; but specific performance is not the only remedy afforded by the law for the violation of such an agreement. The ordinary action for resulting damages is an appropriate, and in most cases an adequate, remedy. This remedy would have been available to appellee had appellant failed to comply with his contract. In this regard there was mutuality both in the obligation and remedy.''

Nor, in our opinion, is there any merit in counsel's further contention that there is *no one* against whom plaintiff could proceed to compel a conveyance, or, if no conveyance were made, against whom plaintiff could proceed in an action for damages for failure to convey. If it should appear that Elmore, as agent and manager for the beneficiaries in the trust agreement, was without authority to sign the particular contract, he could be held personally liable for all ensuing damages. In *Frankland v. Johnson,* 147 Ill. 520, 525, it is said: ''It is well understood that if the agent, either of a corporation or an individual, makes a contract which he has no authority to make, he binds himself personally, according to the terms of the contract.'' In *Annes v. Carolan, Graham, Hoffman, Inc.,* 336 Ill. 542, 545, it is said: ''Where an agent makes a contract for a principal who is wholly or partially undisclosed the agent is bound by the contract.''

Nor, in our opinion, is there any merit in counsel's further contention that the contract is void and cannot be enforced against the beneficiaries, because it appears that at the time Elmore signed the contract, as manager, he had ceased to be such. It sufficiently ap-

pears from the evidence that, while the supplementary agreement whereby H. W. Elmore & Co., a corporation, was substituted as manager in lieu of Elmore is dated December 31, 1926, said agreement was not actually signed and delivered, or the substitution made effective, until May 18, 1927, several months after the contract in question was signed by Elmore as manager. It is well settled law that the actual date of the execution and delivery of a deed or instrument may be shown by parol testimony. (8 R. C. L. p. 1015, sec. 73; *Blake v. Fash,* 44 Ill. 302, 305; *Greenebaum v. Gage,* 61 Ill. 46, 49.)

Other points are made by counsel for defendants as reasons for the affirmance of the judgment appealed from but we deem it unnecessary to consider them.

For the reasons indicated the judgment against plaintiff should be affirmed and it is so ordered.

*Affirmed.*

SCANLAN, P. J.; and KERNER, J., concur.